

RECEIVED
JAN 0 5 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Kenneth D Guthery

       Plaintiff(s),       Case No. 1:06cv00176

v.

United States
       Defendant.

RESPONSE TO UNITED STATES' MOTION TO DISMISS
AND MOTION TO VACATE

**QUESTION PRESENTED**

Can the instant action be dismissed when the plaintiff has signed the return of service himself ?

**DISCUSSION**

Plaintiff agrees that the record shows that plaintiff signed the return of service. Thus it is undisputed that plaintiff effected service by sending the summons and complaint by certified mail to the Attorney General and the United States Attorney for the District of Columbia. In doing so, plaintiff did not comply with the requirement of Rule 4(c)(2) that service be affected by a person not a party to the action.

While service of process on the Attorney General and the United States Attorney was therefore, improper plaintiff's complaint should not be dismissed because of this defect

Federal Rules Civil Procedure 4(m). The defendant is correct that courts generally dismiss cases where a plaintiff fails to effect proper service. However pro se litigants should be allowed more latitude that litigants represented by counsel to correct defects in service of process and pleadings. Although district courts do not need to provide guidance to pro se litigants, they should at least supply minimal notice of the consequences of not complying with the procedural rules.

Although plaintiff did not perfect service after the defendant's motion to dismiss was filed the Court at that time provided plaintiff no instruction making clear the consequences of failing to perfect service of process. Further, this particular defect in the service performed by the plaintiff was not significant. While Rule 4(c)(2)'s requirement that parties not effect service of process themselves would not be served by dismissing this case on the grounds that the pro se plaintiff himself mailed the summons and complaint to the defendant rather than soliciting a stranger to mail them on the plaintiff's behalf. The Court should therefore, deny the defendant's initial motion to dismiss the plaintiff's complaint on insufficient service of process grounds.

## QUESTION PRESENTED

Is defendant, with the active assistance of counsel, "reading into" section 7433 language that Congress had included in TBOR I, but omitted from TBOR III?

## DISCUSSION

TBOR I (1988) expressly withheld jurisdiction in the absence of a prior exhaustion

of administrative remedies. TBOR II (1996) specifically removed that prior exhaustion requirement, providing for mitigation of damages in the absence of exhaustion. TBOR III (1998, in P.L. 105-206, §§ 3000, 3102) specified only that "A judgment for damages shall not be awarded under subsection (b) *unless the court determines* that the plaintiff has exhausted the administrative remedies *available* to such plaintiff within the Internal Revenue Service." 26 USC § 7433(d) (emphases added).

It appears that defendant's insistence (in the Motion to Dismiss, citing the regulation) that administrative remedies must be exhausted "prior to" commencement of a civil action relies upon language removed by Congress in 1996; no such "prior exhaustion" language was added in 7433's current incarnation.

## QUESTION PRESENTED

Is Treasury Decision 9050, 68 FR 14320, Mar. 25, 2003, in merely <u>amending</u> Treasury Decision 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, a reasonable interpretation of P.L. 105-206, § 3102 under the deferential framework of *Chevron U.S. A. Inc. v. Natural Resources Defense Council*, Inc., 467 U.S. 837?

## DISCUSSION

As shown in Title 26 of the Code of Federal Regulations, IRS failed to prescribe the administrative procedure necessary to give effect to section 7433, as originally added, for over three years after Congress enacted TBOR I. Treasury Decision 8392, 57 FR 3536, necessary from and after November 10, 1988, was not promulgated until January 30,

1992, and it appears that the regulation was ineffective until February 18, 1992.

In respect of Congress' removal of the jurisdictional prohibition in TBOR II (1996), IRS failed to amend the regulation to reflect Congress' intent at all.

Treasury Decision 9050, 68, FR 14320, failed to amend Treasury Decision 8392 until March 25, 2003, more than four years and nine months after Congress' enactment of P.L. 105-206, § 3102 (TBOR III). This period of "unavailability" of administrative remedy provides the context in which the March 25, 2003 version of the regulation re-implements TBOR I's "prior administrative exhaustion" requirement, without the statutory framework necessary to such re-implementation.

Plaintiff asserts that Treasury Decision 9050 (the current 26 C.F.R. § 301.7433-1) is 1) an unreasonable interpretation of Public Law 105-206, § 3102; exceeds the authority of Public Law 105-206, § 3102 by retaining the "may not be maintained" ("prior exhaustion") language of TBOR I; that Treasury Decision 9050 2) impermissibly extends the operation of the exhaustion requirement; that the regulation 3) frustrates Congress' intent in creating, and amending, 7433; and that it 4) effectively converts a "7433 damages" claim into a "7422 refund" claim, effecting an unauthorized "stealth repeal" of TBOR III by regulation.

## THE REGULATION IS AN UNREASONABLE INTERPRETATION

The current regulation requires that an injured Citizen wait up to six months for a ruling on an administrative claim before bringing a civil suit, failing, even under the

deferential framework of *Chevron U.S. A. Inc. v. Natural Resources Defense Council*, Inc., 467 U.S. 837, the standard of reasonable interpretation of a statute, and is intended to frustrate a 7433 Plaintiff, to wit:

The half-year waiting period is extreme. In almost every other instance, IRS is limited to (and may limit to) 30 days. Examples include Collection Due Process Hearing requests (30 days, imposed by Congress); pre-Notice of Deficiency letters (30 days). Even opportunity to petition for redetermination of a Notice of Deficiency has a window of 90 days. Yet IRS chose to give itself 183 days to decide upon an administrative damages claim. Few people, if any at all, could withstand the six month period for reasons known to, and published by, the National Taxpayer Advocate.[1]

**THE REGULATION EXCEEDS THE AUTHORITY OF THE STATUTE**

In construing 7433's current incarnation, the starting point must be the language employed by Congress. See: *Reiter v Sonotone Corp.*, 442 US 330, 337, 60 L Ed 2d 931, 99 S Ct. 2326 (1979) and the courts must assume that the legislative purpose is expressed by the ordinary meaning of the words used. *Richards v United States*, 369 US 1, 9, 7 L Ed 2d 492, 82 S Ct. 585 (1962). 7433's current language must ordinarily be regarded as conclusive, *Consumer Product Safety Comm'n v GTE Sylvania, Inc.*, 447 US 102, 108, 64 L Ed 2d 766, 100 S Ct. 2051 (1980), and unless Congress has clearly indicated that its

---

[1] SEE: excerpts from NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS, below.

intentions are contrary to the words it employed in the statute, this is the ending point of interpretation. *Fuller v. United States*, 615 F. Supp. 1054 (D.C. Cal 1985; quoting Richards v. United States, supra.

TBOR III, found in section 3102 of the IRS Restructuring and Reform Act of 1998, omits the "prior exhaustion" requirement previously found in TBOR I. Section 7433, as re-amended by TBOR III, is <u>silent</u> with respect to bringing or maintaining a 7433 action. The revision states no more than "...no judgment shall be awarded unless the Court <u>determines</u> that administrative remedies <u>available</u> have been exhausted." Treasury Decision 9050 purports to completely thwart the Court's jurisdiction ("no suit may be maintained") in excess of the statutory mandate. To that extent, the "amendment" of the regulation in Treasury Decision 9050 exceeds the reach of the statute. (Emphases added)

As noted above, "determines" relates to a factual issue, within the province of a jury; the factual determination necessarily includes the extent to which any administrative remedy is "available".

**AVAILABILITY OF REMEDY**

A comprehensive history of IRC § 7433 was published by the American Bar Association, and Plaintiff respectfully directs the Court's attention to what the Bar had to say about the re-amendment:

> "[F]ew pro se plaintiffs have actual notice of the process established by Treasury Regulation section 301.7433-1. Congress should understand many people's distrust

of the ability of the IRS to proceed with their claims..."

As discussed below, the Bar's recognition that "few pro se plaintiffs have actual notice of the process" directly addresses "availability" of remedy, as shown by IRS' published policy regarding return of amounts unlawfully collected. Internal Revenue Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9, is to refrain from returning amounts unlawfully collected. P-5-36 states:

> "(1) Returning money wrongfully collected: This Policy Statement has been revoked."

Thus, even if IRS has collected unlawfully, and knows it, whatever Policy might have existed was revoked. The administrative remedy of filing a claim to recover unlawfully collected amounts is clearly unavailable when the Service Policy on such matters has been revoked.

**REGULATION IMPERMISSIBLY CONVERTS DAMAGES ACTION INTO REFUND ACTION**

By requiring that Plaintiff(s) (claimants) place a specific value upon injuries claimed, the regulation effectively neuters the statutory provision in instances where, as alleged in Plaintiff(s) complaint, IRS denies a meaningful Collection Due Process Hearing; a "collection" might not yet have occurred, yet Plaintiff's right to challenge the existence of

the underlying liability - established in the statutory provision (6330(c)(2)(B)) - is thwarted[2].

## THE REGULATION FRUSTRATES CONGRESS' INTENT

TBOR I, TBOR II, and TBOR III (RRA '98, § 3102) are testaments of Congress' awareness that IRS cannot be trusted to administer the tax code without supervision. Indeed, in the words of former Deputy Assistant Secretary of Treasury Bradford DeLong, now a Professor at University of California, Berkeley,

> "The IRS's comparative advantage is using random terror to elicit voluntary compliance with the tax code...".

Congress intended that Citizens harmed by IRS' legendary disregard of governing statutes and regulations have an avenue to be made whole. Once again, the Congressional "key" is <u>availability</u> of the administrative remedy. If the Court makes a factual determination (province of the jury) that an administrative remedy is effectively unavailable, it need not be pursued.

---

[2] Counsel's mischaracterization of the instant case as a "refund" action is specifically addressed below.

The *Morton* Court *supra*, opined, at 235:

Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required. Service v. Dulles, 354 U.S. 363, 388 (1957); Vitarelli v. Seaton, 359 U.S. 535, 539-540 (1959).

As established in the Code of Federal Regulations, IRS refused to even establish procedures for four years after the right to bring an action was granted by Congress, and currently imposes a prohibitive provision omitted by Congress. Administrative remedy, arguably available in form, is effectively unavailable in substance, as evidenced by Treasury Inspector General Tax Administration reports, mandated in RRA '98, section 1102, failing to show a single instance of IRS granting an administrative claim for damages. The TIGTA Reports, spanning at least 5 years, confirm this.

As stated by the Supreme Court in *Morton v. Ruiz*, 415 U.S. 199 (1974): The agency power to make rules that affect substantial individual rights and obligations carries with it the responsibility not only to remain consistent with the governing legislation, *FMC v. Seatrain Lines, Inc.*, 411 U.S. 726 (1973); *Dixon v. United States*, 381 U.S. 68, 74 (1965); *Brannan v. Stark*, 342 U.S. 451 (1952), but also to employ procedures that conform to the law. See *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 764 (1969) (plurality opinion). Treasury Decision 9050 fails to remain consistent with P.L 105-206 section 3102, *FMC v. Seatrain Lines, Inc.*, *Dixon v. United States*, *Brannan v. Stark*, and the procedures therein fail to conform to the law. *NLRB v. Wyman-Gordon Co.*

Lack of specific attention to the statutory authorization is especially important in light of the Supreme Court's pronouncement in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), quoted in *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 287 n. 5 (1978), and cited in *SEC v. Sloan*, 436 U.S. 103 (1978), specifying that factors to be considered in giving weight to an administrative ruling include "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *SEC v. Sloan*, 436 U.S. 103, 117-118.

The regulation itself is the best evidence of "Lack of specific attention to the statutory authorization" (Skidmore) and failure of "thoroughness...in its consideration" (Sloan). In 301.7433-1's subsection (a), "An action for damages...may not be maintained...", notwithstanding Congress' omission of a "prior exhaustion" requirement; paragraph (1) thereof changes, "reckless or intentional actions" to "reckless or <u>international</u> actions..." (emphasis added).

Treasury Decision 9050 fails to remain consistent with P.L 105-206 section 3102; the procedures therein fail to conform to the law, and the regulation fails "all those factors which give it power to persuade." *SEC v. Sloan*, 436 U.S. 103, 117-118.

Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly

within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions. *National Labor Relations Board v. Brown*, 380 U.S. 278, 291-292.

For the above stated reasons defendants' motion to dismiss and motion to vacate should be denied.

Respectfully submitted

*[signature]*
Kenneth D Guthery

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the forgoing on:

Jennifer L. Vozne
U.S. Dept of Justice
P.O. Box 277
Washington D.C. 20044

Dated _____January 3_____, 2007

*[signature]*
Kenneth D Guthery